UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BUTTONWOOD TREE VALUE PARTNERS, LP and JOHN SORRELLS, on Behalf of Themselves and all Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>JACK A. SWEENEY, STEVEN J. SWEENEY, MARILYN J. SWEENEY, GARY M. HORGAN, H. ANTHONY GARTSHORE, ELIZABETH THOMPSON, FRED. M. EDWARDS, THOMAS E. McCULLOUGH, RICHARD SCHREIBER, LAWRENCE J. SHERMAN, and DELOITTE & TOUCHE, LLP,<br><br>          Defendants. | Case No.: SACV10-00537-CJC(MLGx)<br><br>ORDER GRANTING DEFENDANT DELOITTE & TOUCHE LLP'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT |

## I.     INTRODUCTION AND BACKGROUND

On June 29, 2012, Plaintiffs Buttonwood Tree Value Partners, LP and John Sorrells, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), filed a Third Amended Complaint ("TAC") in their securities class action

against the above-captioned Defendants alleging that all Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, and that certain officers and/or directors of First Regional Bancorp ("FRB"), a financial services company, and its wholly-owned subsidiary First Regional Bank ("the Bank") (collectively, the "Individual Defendants") also violated Section 20(a) of the Securities Exchange Act of 1934. Plaintiffs allege that Defendants enacted a scheme to defraud the investing public regarding the financial condition of the Bank in order to maintain artificially high prices for FRB's securities and cause Plaintiffs and other investors to purchase FRB securities at artificially inflated market prices. In particular, Plaintiffs allege that Defendant Deloitte & Touche, LLP ("Deloitte") audited FRB's year-end financial statements for 2006, 2007, and 2008 and issued unqualified opinions on those statements when it knew it had no legal or professional justification for doing so and that its certifications and the financial statements would deceive members of the public. (TAC ¶¶ 21, 34.) Plaintiffs allege that Deloitte misrepresented that the audited financial statements of FRB and the Bank were prepared in compliance with Generally Accepted Accounting Principles ("GAAP") and that it conducted its audit in compliance with Generally Accepted Auditing Standards ("GAAS"). (*Id.* ¶ 2.)

This action, originally filed on May 5, 2010 against the Individual Defendants, has been extensively litigated. On February 22, 2011, the Court denied the Individual Defendants' motion to dismiss Plaintiffs' First Amended Complaint, holding that it alleged sufficient facts to state a claim under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5. (Dkt. No. 40.) The Court denied the Individual Defendants' motion for summary judgment on January 19, 2012 because the parties presented conflicting evidence on the issue of loss causation. (Dkt. No. 101.) On February 10, 2012, Plaintiffs filed a Second Amended Complaint ("SAC"), adding Deloitte as a defendant. (Dkt. No. 109.) The Court granted Deloitte's motion to dismiss the SAC on June 7, 2012 because Plaintiffs failed to adequately allege scienter and

subjective falsity against Deloitte.  (Dkt. No. 148.)  After Plaintiffs filed their TAC, both Deloitte and the Individual Defendants filed motions to dismiss the TAC on August 13, 2012.  (*See* Dkt. Nos. 166, 171.)   Presently before the Court is Deloitte's motion to dismiss.  Once again, the Court GRANTS Deloitte's motion, but this time, the Court dismisses with prejudice Plaintiffs' securities claim against Deloitte. [1]   Plaintiffs' allegations at best suggest that Deloitte acted negligently.  Those allegations fall short of demonstrating that Deloitte was deliberately reckless or that it consciously knew its findings and opinions were inaccurate and would deceive the investing public.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  The district court may also consider materials appropriate for judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  However, "the tenet

---

[1]  Concurrently herewith, the Court has issued a separate order denying the Individual Defendants' motion to dismiss the TAC.

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## III.   ANALYSIS

In order to state a claim for violation of Section 10(b) Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, Plaintiffs must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008). Deloitte argues that Plaintiffs have failed to adequately plead scienter and subjective falsity with respect to the alleged misrepresentations.

The Private Securities Litigation Reform Act ("PSLRA") imposes heightened pleading standards in securities fraud actions with respect to misrepresentations and to scienter that are similar to the particularity requirement under Federal Rule of Civil Procedure 9(b).  The plaintiff must "specify each statement alleged to have been

misleading" and "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).  The plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.* § 78u-4(b)(2).

**A. Scienter**

A plaintiff's burden to show scienter is quite high when alleging securities fraud against an outside auditor.  The Ninth Circuit requires a plaintiff to "prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts."  *Dannenberg v. Painewebber Inc.* (*In re Software Toolworks Sec. Litig.*), 50 F.3d 615, 628 (9th Cir. 1994) (quoting *Miller v. Pezzani* (*In re Worlds of Wonder Sec. Litig.*), 35 F.3d 1407, 1426 (9th Cir. 1994)).  It is generally difficult for plaintiffs to sufficiently plead a strong inference of scienter "because outsider auditors have more limited information than, for example, the company executives who oversee the audit" and because "an auditor exercises complex and subjective professional judgments that courts are not ideally positioned to second guess." *N.M. State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089, 1097 (9th Cir. 2011) (internal quotation marks and citation omitted).  Further, "[t]he accountant's success depends on maintaining a reputation for honesty and integrity, requiring a plaintiff to overcome the irrational inference that the accountant would risk its professional reputation to participate in the fraud of a single client."  *Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1007 (S.D. Cal. 2000).

Plaintiffs are required to "plead in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *DSAM Global Value Fund v. Altris Software*, 288 F.3d 385, 388–89 (9th Cir. 2002) (quoting

*Janas v. McCracken* (*In re Silicon Graphics Sec. Litig.*), 183 F.3d 970, 974 (9th Cir. 1999), *abrogated on other grounds as recognized in South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008)).  Recklessness is "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990). Plaintiffs are required "to plead facts that come closer to demonstrating actual intent, rather than merely motive and opportunity."  *In re Impac Mortg. Holdings, Inc.*, 554 F. Supp. 2d 1083, 1089 (C.D. Cal. 2008) (citing *In re Silicon Graphics*, 183 F.3d at 974 (9th Cir. 1999)).  Accordingly, "mere allegations that an accountant negligently failed to closely review files or follow GAAP cannot raise a strong inference of scienter."  *DSAM*, 288 F.3d at 390.  But, "at the pleading stage, courts have recognized that allegations of GAAS violations, coupled with allegations that significant 'red flags' were ignored, can suffice to withstand a motion to dismiss."  *N.M. State Investment Council*, 641 F.3d at 1102 (internal citation omitted).

In determining whether a Plaintiff has adequately pleaded scienter, a court "must engage in a comparative evaluation" and consider competing inferences "rationally drawn from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  "[A]n inference of scienter must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.*  First, a court considers whether any of a plaintiff's allegations alone are sufficient to create a strong inference of scienter.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009)  If no individual allegation is sufficient, the court must then "assess all the allegations holistically" and ask: "When the

allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?"  *Tellabs,* 551 U.S. at 326.

Plaintiffs allege that Deloitte was aware of, and ignored, numerous "red flags" that indicated FRB and the Bank's wrongdoing.[2]  The red flags fall into three general categories: (1) implausibly modest allowances for loan and lease losses ("ALLL") calculations, (2) grossly inadequate underwriting and portfolio valuation procedures, and (3) grossly inadequate internal controls.  (Pls.' Opp'n to Deloitte's Mot. to Dismiss, at 12.)  Some of Plaintiffs' more significant red flags include that Deloitte was aware of a 2005 Memorandum of Understanding ("MOU") issued by the Federal Deposit Insurance Corporation ("FDIC") and California Department of Financial Institutions ("DFI") requiring the Bank to develop written lending and collections policies, (TAC ¶ 41), as well as an FDIC report issued in April 2007 noting several unsafe and unsound banking practices and criticizing the Bank's compliance with the 2005 MOU, (*id.* ¶¶ 58–59).  Deloitte was allegedly aware of the contents of a March 2008 Cease and Desist Order, (*id.* ¶¶ 64–65), and of a joint FDIC and DFI report issued in June 2008, which stated that "the Bank was operating with inadequate loan valuation reserves and a large volume of poor quality loans," (*id.* ¶ 77).  Prior to the issuance of Deloitte's 2008 audit opinion, another Cease and Desist Order was issued in February 2009 that Plaintiffs allege should have prompted Deloitte to require the Bank's audit committee and Board to increase the ALLL.  (*Id.* ¶ 87(13).)  Plaintiffs further allege dozens of other ostensible red flags arising from regulators' concerns, Deloitte's own criticism of the Bank, and the Bank's risky lending practices.

---

[2] " 'Red flags' are those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors."  *Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS (SHx), 2008 U.S. Dist. LEXIS 52365, at *54 n.13 (C.D. Cal. July 1, 2008) (quoting *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1333 (M.D. Fla. 2002)).

None of the "red flags" asserted by Plaintiff individually create a strong inference of scienter.  The majority of the purported red flags are not red flags at all because they suggest poor decision-making, not fraud.  For example, Plaintiffs' assertion that FRB's appraisal reviewer did not have prior experience or formal training suggests that FRB had inexperienced staff, not that it was deceiving the public.  (*See* TAC ¶ 39.)  Similarly, allegations concerning the Bank's reliance on brokered deposits, (TAC ¶¶ 70(10), 87(14)), insufficient loss reserves for specific loans, (*id.* ¶ 70(8)), and non-responsiveness to the economic climate, (*id.* ¶47(9)), are reflective of subjective management decision-making and are not "in your face facts that cry out, 'how could [Deloitte] not have known that the financial statements were false.' "  *N.M. State Inv. Council*, 641 F.3d at 1103.  An auditor is not an insurance policy against poor business judgment, and Deloitte is not responsible for FRB's discretionary decisions because "[s]ecurities laws do not guarantee sound business practices."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *In re Software Toolworks Sec. Litig.*, 50 F.3d at 627 (evidence that agreements were poorly documented, transactions were risky, management was under pressure, and that the auditor obtained only oral confirmations of some agreements was insufficient to show scienter against outside auditor).  Even the specific allegations that GAAP and GAAS were violated do not alone meet Plaintiffs' burden, because "mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter."  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1426.

Even considered holistically, the allegations do not raise a compelling inference that Deloitte's behavior amounted to deliberate recklessness or conscious misconduct.  The TAC itself creates a strong inference that Deloitte did not ignore or disregard the purported red flags, but rather that it examined the Bank's financial condition, recognized weaknesses, and provided recommendations to FRB and the Bank's management regarding its concerns.  *See Batwin*, 2008 U.S. Dist. LEXIS 52365, at *56 ("[P]laintiff's contention that the Auditor defendants 'turned a blind eye' to the accounting problems at

Occam, is belied by allegations in the complaint that [the auditors] identified and informed Occam's management of internal control deficiencies.").  For example, the TAC alleges that Deloitte tested the valuation of loans, (*see, e.g.*, TAC ¶¶ 47(6), 70(4)), expressed its concerns regarding FRB's practices to FRB's audit committee, (*see, e.g.*, *id.* ¶¶ 47(3), 47(10), 70(3), 87(2)), and specifically identified the ALLL as an area of concern for the 2008 audit, (*id.* ¶ 66).  These are not the actions of a firm conducting "no audit at all."

Plaintiffs' allegation that Deloitte unquestioningly acquiesced to FRB and the Bank's alleged wrongdoing is further undermined by the fact that Deloitte identified a material weakness in FRB's internal controls in its 2007 opinion.  Deloitte's opinion, issued March 17, 2008 as part of FRB's publicly filed 10-K, states: "In our opinion, because of the effect of the material weakness . . . the Company has not maintained effective internal control over financial reporting as of and for the year ended December 31, 2007."  2007 Form 10-K at 52.[3]  This opinion is inconsistent with Plaintiffs' allegation that Deloitte pandered to FRB's management.  It instead bolsters an inference of nonfraudulent intent.  *See In re A-Power Energy Generation Systems Ltd. Sec. Litig.*, MDL 11-2302-GW(CWx), 2012 U.S. Dist. LEXIS 79417, at *33 (C.D. Cal. May 31, 2012) ("It is difficult to envision a scienter allegation sufficient to state a securities fraud claim against an auditor who explicitly issued negative internal control findings in connection with the same company whose financial results it is alleged to have manipulated or purposely ignored in order to fool the investing public.").

///

///

---

[3]  The Court takes judicial notice of FRB's Form 10-K filed on March 17, 2008, attached as Exhibit 4 to the Declaration of Marcy C. Priedeman (Dkt. No. 168).

The allegations in the TAC show that far from conducting "no audit at all" and ignoring red flags, Deloitte recognized and reported criticism of the Bank's practices and considered the ramifications of those weaknesses in reaching its ultimate professional judgments.  Plaintiffs' retrospective assertions that Deloitte should have expanded its auditing procedures, conducted further investigation, and issued "qualified" or "adverse" opinions amount to impermissible fraud by hindsight.  While Plaintiffs may be able to establish that Deloitte did not perform its job well and acted carelessly in light of facts it knew or should have known, the TAC's allegations do not meet the high scienter standard imposed by the PSLRA.  It is simply "not enough for [Plaintiffs] to state facts giving rise to a mere speculative inference of deliberate recklessness, or even a reasonable inference of deliberate recklessness." *In re Silicon Graphics Sec. Litig.*, 183 F.3d at 985.  The TAC cannot withstand a motion to dismiss because even "allegations of a seriously botched audit" are insufficient to establish the inherently deceptive state of mind necessary to create a strong inference of scienter.  *DSAM Global*, 288 F.3d at 387. Plaintiffs have not shown that Deloitte's allegedly false representations resulted from anything more than negligence.

## B. Subjective Falsity

Deloitte also argues that Plaintiffs have again failed to allege subjective falsity as required for the "misrepresentation" element of a Section 10(b) and Rule 10b-5 claim. When a plaintiff challenges opinion statements under the securities law, the plaintiff must allege "with particularity that the statements were both objectively and subjectively false or misleading." *Rubke v. Capital Bancorp*, 551 F.3d 1156, 1162 (9th Cir. 2009); *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991); *McGuire v. Dendreon Corp.*, 688 F. Supp. 2d 1239, 1243 (W.D. Wash. 2009) ("The Supreme Court has thus held that a plaintiff cannot plead statements of opinion as actionable without alleging that the speaker did not believe in the opinion he was stating or did not reveal his true reasons for

saying what he said.").  "[T]o allege that an auditor opinion is a misrepresentation, a complaint must show that the statement in question is grounded on a specific factual premise that is false, and that the speaker did not 'genuinely or reasonably believe' it."  *In re Longtop Fin. Techs. Ltd. Secs. Litig.*, No. 11 Civ. 3658, 2012 U.S. Dist. LEXIS 162878 , at *38 (S.D.N.Y. Nov. 14, 2012).  In its Order dismissing the SAC, the Court held that Plaintiffs must plead subjective falsity because an auditor's GAAS and GAAP assertions are statements of professional judgment and opinion, not verifiable fact.  *See In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 300–03 (S.D.N.Y. 2011).  Plaintiffs' arguments have not convinced the Court otherwise.

The TAC alleges that Deloitte recognized weaknesses in FRB and the Bank's financial reporting procedures, and that Deloitte knew that FRB's year-end financial statements were "false and misleading," (TAC ¶ 2), that it knew its opinions "were false and would deceive the investing public," (*id.* ¶ 3), and that it "blessed" the financial statements "when it knew it had no legal or professional justification for doing so," (*id.* ¶ 34).  (*See also, e.g., id.* ¶¶ 47, 47(10), 48.)  But the TAC is completely devoid of any substantive allegation demonstrating that Deloitte did not genuinely believe its opinions to be accurate when they were issued.  Deloitte's memoranda and work papers as described in the TAC instead indicate that Deloitte recognized FRB and the Bank's weaknesses yet did not consider them significant enough to warrant a qualified or adverse opinion.  (*See, e.g.*, TAC ¶ 47(6) (alleging that Deloitte recognized underwriting weaknesses that "if not for a strong borrowing relationship" would heighten the credit concern), ¶ 87(2) (alleging that Deloitte informed the FRB audit committee that certain loans were improperly classified but that "the difference in risk rating did not result in an adjustment to the allowance").)  The allegations lead to an inference that Deloitte incorporated its concerns into its opinions and genuinely believed its conclusions to be true.  Plaintiffs' conclusory allegations to the contrary fail to allege subjective falsity with particularity.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant Deloitte & Touche LLP's motion to dismiss Plaintiffs' Third Amended Complaint is **GRANTED.**  As Plaintiffs have been unable to remedy the deficiencies identified by the Court, their claim against Deloitte is **DISMISSED WITH PREJUDICE**.

DATED:     December 10, 2012

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE